IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00228-RJC-DSC

| | |
|---|---|
| **C.A., a minor by and through his Guardian ad Litem TIFFANY SCOTT,** | ) ) ) |
| **And** | ) ) |
| **K.G., a minor by and through his Guardian ad Litem TIFFANY SCOTT,** | ) ) ) |
| **And** | ) ) |
| **K.M., a minor by and through his Guardian ad Litem HOLDEN CLARK,** | ) ) ) |
| **Plaintiffs,** | ) ) |
| v. | ) ) |
| **GASTON COUNTY BOARD OF EDUCATION and PENNY POPE BARKER, individually and in her official capacity as an employee of Gaston County Board of Education,** | ) ) ) ) ) ) ) |
| **Defendants.** | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on "Defendant Gaston County Board of Education's Motion for Partial Dismissal of Amended Complaint" (document #12) filed June 25, 2020 and "Defendant Penny Pope Barker's Rule 12(b)(6) Motion to Dismiss" (document #14) filed June 25, 2020.

1

These Motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and are ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motions to Dismiss be <u>granted in part</u> and <u>denied in part</u> as discussed below.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Accepting the allegations of the Amended Complaint as true, Defendant Barker was employed by Defendant Board of Education as a special education teacher at McAdenville Elementary School. Plaintiffs are three autistic children who were all Barker's students. All three children are represented in this action by and through their Guardians ad Litem.

Plaintiffs allege that between January 1, 2017 and February 6, 2017, Barker assaulted K.G. by dousing the child with ice cold water. Barker refused to allow the child to change clothes until the end of the school day. At the time, Barker knew of the sensory issues experienced by K.G., which were expressly indicated his Individual Education Plan.

Between January 1, 2017 and February 6, 2017, Barker grabbed C.A. by the ear and picked him up off the ground, resulting in a laceration to the back of his earlobe and bleeding.

Barker also forcefully grabbed K.M. and pinned him down between two bean bags with her body weight as he screamed, cried, and struggled to breathe. It was only when a teaching assistant entered the classroom that Barker released K.M.

Plaintiffs allege numerous other instances of abuse. These include Barker striking one of the Plaintiffs on his head and forcefully holding and striking another Plaintiff with a pointer, using

2

her body weight to pin him down, intimidating him with a belt, placing him in a closet, and forcefully restraining him. Barker also engaged in fits of rage, withheld food and belittled Plaintiffs in front of classmates and teaching assistants. Plaintiffs allege that Barker's continuous, abusive behavior caused them severe emotional distress and led to negative changes and regressions in behavior for all of them. They include toilet training issues, withdrawal, and other negative emotional behaviors.

Plaintiffs further allege that Barker's conduct was reported on multiple occasions and by multiple sources to the principal at McAdenville Elementary School and the Gaston County School Board. Despite the reports of abuse, Defendant School Board was going to allow Barker back into the classroom without an adequate investigation. Barker was later convicted in state District Court on two counts of assault on a child under twelve. Those convictions were later dismissed. Plaintiffs now bring this civil action.

In their Amended Complaint, Plaintiffs bring ten causes of action. They allege negligent supervision, negligent retention, violations of the North Carolina Constitution, civil conspiracy under RICO, intentional and negligent infliction of emotional distress, and violations of 42 U.S.C §§ 1983, 1985(3) against the School Board. They allege assault, battery, violations of the North Carolina Constitution, intentional and negligent infliction of emotional distress, and violations of 42 U.S.C §§ 1983, 1985(3) against Barker in her individual and official capacities. Plaintiffs seek compensatory and punitive damages as well as attorney's fees.

On April 17, 2020, Defendants removed this action from Gaston County Superior Court pursuant to 28 U.S.C. § 1441. Plaintiffs' state law claims were likewise removed pursuant to the doctrine of supplemental jurisdiction under 28 U.S.C. § 1441(c).

On June 25, 2020, Defendants moved for partial dismissal of Plaintiffs' Amended Complaint pursuant FRCP 12(b)(6). Defendant School Board seeks dismissal of all of Plaintiffs' claims except for negligent supervision and retention. Barker seeks dismissal of Plaintiffs' claims under the state Constitution, IIED, NIED, and 42 U.S.C § 1985(3).

Plaintiffs do not contest dismissal of their civil conspiracy or 42 U.S.C §§ 1983, 1985(3) claims against the Board. They do not contest dismissal of their NIED or 42 U.S.C § 1985(3) claims against Barker. Plaintiffs move that these claims be dismissed without prejudice.

The claims at issue here are Plaintiffs' North Carolina Constitution, NIED, and IIED claims against the Board and their North Carolina Constitution and IIED claims against Barker.

## II. DISCUSSION

### A. Motion to Dismiss Fed. R. Civ. P. 12(b)(6)

#### 1. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that

4

Case 3:20-cv-00228-RJC-DSC   Document 23   Filed 08/11/20   Page 4 of 14

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark [] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of

5

Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 Fed. Appx. 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

### 2. Defendant Gaston County Board of Education

#### a. North Carolina Constitution – Article I, Sections 15 and 19 Claims

Plaintiffs' Fifth Cause of Action brings claims under Article I, sections 15 and 19 of the North Carolina Constitution. "However, no North Carolina appellate court has recognized a private right of action for damages under the North Carolina constitution against a local board of education for the denial of the privilege of education." Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ., 179 F. Supp. 3d 544, 558 (M.D.N.C. 2016) (citing Frye v. Brunswick Cty. Bd. of Educ., 612 F. Supp. 2d 694, 707 (E.D.N.C. 2009)). Sauers dismissed North Carolina Constitutional claims under both sections 15 and 19 of Article I for this reason. Sauers, 179 F. Supp. 3d at 558-59.

Other North Carolina courts have limited dismissal to claims brought under Article I, section 15 because "[t]o date, we are not aware of any decision by either this Court or the Supreme Court which has extended the educational rights guaranteed by N.C. Const. art. I, § 15 . . . beyond matters that directly relate to the nature, extent, and quality of the educational opportunities made available to students in the public school system." Doe v. Charlotte-Mecklenburg Bd. of Educ., 731 S.E.2d 245 (N.C. Ct. App. 2012). Claims brought under Art. I, § 19 are equivalent to due process and equal protection claims under the United States Constitution and cannot be implicated by purely negligent acts. Id. at 253.

6

Case 3:20-cv-00228-RJC-DSC   Document 23   Filed 08/11/20   Page 6 of 14

In any case, "[a] plaintiff can assert a direct claim under the North Carolina Constitution only when there is no adequate remedy at common law or under a state statute." Barrett v. Bd. of Educ. of Johnston Cty., 13 F. Supp. 3d 502, 514 (E.D.N.C. 2014), aff'd, 590 F. App'x 208 (4th Cir. 2014) (citing Corum v. Univ. of N.C., 413 S.E.2d 276, 289 (N.C. 1992)). "For an adequate state law remedy to exist, the remedy 'must provide the possibility of relief under the circumstances.'" Id. (citing Corum, 413 S.E.2d at 355). In North Carolina, an adequate state law remedy exists against an employee in her individual capacity, even after the dismissal of claims against a governmental entity. Glenn-Robinson v. Acker, 538 S.E.2d 601, 619 (N.C. Ct. App. 2000); Barett, 13 F. Supp. 3d at 514 (citing Maney v. Fealy, No. 1:12CV800, 2013 WL 3779053, at *9 (M.D.N.C. July 18, 2013)).

Plaintiffs' N.C. Const. art. I, § 15 claims must be dismissed because there is no private right of action. Plaintiffs' N.C. Const. art. I, § 19 claims must also be dismissed. A section 19 claim cannot be based upon negligence alone. Furthermore, Plaintiffs have adequate state law remedies against Barker in her individual capacity. Consequently, Plaintiffs cannot assert a direct claim under the North Carolina Constitution.

Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiffs' state constitutional claims be granted.

### b. Intentional Infliction of Emotional Distress Claim

"The essential elements of a claim for intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress.'" Holloway v. Wachovia Bank & Tr. Co., 452 S.E.2d 233, 240 (N.C. 1994) (quoting Dickens v. Puryear, 276 S.E.2d 325, 335 (N.C. 1981)). "An employer will be liable

7

under [respondeat superior] when the employee's act is expressly authorized; . . . committed within the scope of [the employee's] employment and in furtherance of his master's business—when the act comes within his implied authority; . . . [or] when ratified by the principal." Medlin v. Bass, 389 S.E.2d 460, 463 (N.C. 1990) (citing Snow v. DeButts, 193 S.E. 224, 226 (N.C. 1937)).

While "[i]ntentional tortious acts are rarely considered to be within the scope of an employee's employment," there are exceptions depending upon the facts at issue. Id. at 464; see also Watson v. Dixon, 502 S.E.2d 15, 20-21 (N.C. 1998). In Watson, the North Carolina Court of Appeals upheld an IIED verdict against Duke University, Dixon's employer, based upon ratification. Watson, 502 S.E.2d at 21. To prove ratification by an employer, "the plaintiff must establish that the 'employer had knowledge of all material facts and circumstances related to the wrongful act, and that the employer, by words or conduct, showed an intention to ratify the act.'" Id. at 20. "Ratification can be shown by any course of conduct which reasonably tends to show an intention on the part of the principal/employer 'to ratify the agent's unauthorized acts,' *[which] may include a failure to act after being apprized [sic] of the material facts and circumstances to the wrongful conduct*." Id. (emphasis added). The failure to act includes a failure to investigate in the same manner as a person of ordinary prudence. Id.

Plaintiffs allege that the Board expressly authorized Barker's abusive conduct, her conduct was committed within the scope of her employment and in furtherance of the Board's interest, and/or, as in Watson, was ratified by the Board's failure to take appropriate and effective action to stop her abuse (document #7, ¶ 86). Further, Plaintiffs allege, "Defendant Barker's inappropriate, illegal, and abusive behavior was reported to Gaston County Schools officials on multiple occasions. . . . Despite the reports of abuse to the Gaston County School Board officials, Defendant School Board was going to allow Defendant Barker back into the classroom without an adequate

8

investigation" (document #7, ¶ 56). Thus, Plaintiffs allege that the Board was apprised of the material facts related to Barker's conduct and failed to act or investigate.

The undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiffs' IIED claim be <u>denied</u>.

### c. <u>Negligent Infliction of Emotional Distress</u>

To state a claim for negligent infliction of emotional distress, a plaintiff must allege that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . ., and (3) the conduct did in fact cause the plaintiff severe emotional distress." <u>Pierce v. Atlantic Grp., Inc.</u>, 724 S.E. 2d 568, 577 (N.C. Ct. App. 2012) (quoting <u>Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.</u>, 395 S.E.2d 85, 97 (N.C. 1990)).

Defendant argues that Plaintiffs are basing their NIED claim on Barker's intentional conduct alone rather than any negligent conduct by the Board. However, "an allegation of ordinary negligence will suffice." <u>Johnson</u>, 395 S.E.2d at 97. Plaintiffs allege that Defendant

> (1) hired Defendant Barker knowing she did not have appropriate and adequate education, training, or experience working with exceptional children and failed to provide and expect adequate training of Defendant Barker; (2) knew or should have known that Defendant Barker was unfit to be in a position of trust where she would have unsupervised access to minor children, specifically minor children with special needs who have limited verbal abilities, (3) knew or should have known of the unlawful abusive treatment directed toward [Plaintiffs] by . . . Defendant Barker and failed to take prompt and appropriate remedial or corrective action to protect [Plaintiffs]; (4) was on actual notice of allegations of abuse against Defendant Barker at several points and failed to remove Defendant Barker from the classroom before additional abuse, which was foreseeable, occurred; (5) was negligent in their supervision of Defendant Barker, in that they knew or should have known in the exercise of reasonable care that Defendant Barker would engage in further unlawful conduct toward [Plaintiffs]; and, (6) had the authority to terminate Defendant Barker but failed to take this appropriate and obvious action.

9

(document #7, ¶¶ 84, 85, 95, 189, 290, 293, 294). "[C]ourts must consider the complaint in its entirety… The inquiry, as several Courts of Appeals have recognized, is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). Plaintiffs' Amended Complaint sufficiently alleges negligent behavior by the Board for the NIED claim.

Next, Defendant argues that Plaintiffs have not sufficiently alleged severe emotional distress. "[T]he term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Johnson, 395 S.E.2d at 97. North Carolina courts have found allegations of severe emotional distress, mental anguish, humiliation and ridicule sufficient to meet this element. Chapman By & Through Chapman v. Byrd, 475 S.E.2d 734, 739 (N.C. Ct. App. 1996) (cited by Araya v. Deep Dive Media, LLC, 966 F. Supp. 2d 582, 603 (W.D.N.C. 2013)).

Plaintiffs' allegations of severe emotional distress, toilet training issues, withdrawal, and other negative behaviors are analogous to those in Chapman. Plaintiffs allege "a mental condition that may be generally recognized and diagnosed by professionals trained to do so" (document #7 ¶ 131). Further, Plaintiffs' allegations are indicative of "the type, manner, and degree of distress." See Horne v. Cumberland Cty. Hosp. Sys., Inc. 746 S.E.2d 13, 20 (2013). The Court finds that Plaintiffs allegations are sufficient to survive dismissal.

Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiffs' NIED claim be denied.

### d. Punitive Damages

Typically, punitive damages are not a 12(b)(6) issue. E.g., Rathbone v. Haywood Cty., No. 1:08CV117, 2008 WL 2789770, at *2 (W.D.N.C. July 17, 2008) ("The court has deemed defendant's motion to dismiss the demand for punitive damages to be a motion to strike such demand. This is required because North Carolina does not recognize a 'cause of action' for punitive damages."). Defendant argues that Plaintiffs' claims for punitive damages against the Board must be stricken because "punitive damages may not be awarded against a board of education in North Carolina." See, e.g., Ripellino v. N.C. Sch. Bds. Ass'n, 581 S.E.2d 88, 94 (2003); Sides v. Cabarrus Mem'l Hosp., Inc., 205 S.E.2d 784, 787, modified on other grounds, 213 S.E.2d 297 (1974) (holding that municipal corporations immune from punitive damages include cities, towns and school districts).

But there is an exception when sovereign immunity is waived by the purchase of liability insurance. Davis v. Blanchard, 175 F. Supp. 3d 581, 599-601 (M.D.N.C. 2016); Magana v. Charlotte-Mecklenburg Bd. of Educ., 645 S.E.2d 91, 92-93 (N.C. Ct. App. 2007). "[Governmental] immunity shall be deemed to have been waived by the act of obtaining [liability] insurance, but such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort." N.C. Gen. Stat. § 115C–42 (2005). Under this statute, Davis allowed claims for punitive damages against a board of education to move forward "because Plaintiff specifically allege[d] that there has been a waiver and, presuming this allegation to be true given the posture of the case, the Board waived immunity to the extent of its insurance coverage, [and] Defendants' motion with respect to punitive damages in the request for relief should be denied." Davis, 175 F. Supp. 3d at 599-601.

Plaintiffs allege, "Defendant School Board has waived their ability to assert any kind of governmental immunity, sovereign immunity, or official duty immunity by purchasing liability insurance" (document #7, ¶ 22).

Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiffs' punitive damages claims be <u>denied</u>.

### 3. **Defendant Penny Pope Barker**

#### a. **North Carolina Constitution – Article I, Sections 15 and 19 Claims**

Plaintiffs also bring their North Carolina constitutional claims against Barker individually and in her official capacity as an employee of the Gaston County Board of Education. However, "[i]t is a matter of 'fundamental jurisprudence the Constitution itself does not recognize or create rights which may be asserted against individuals.'" <u>Sauers</u>, 179 F. Supp. 3d at 558 (citing <u>Corum</u>, 413 S.E.2d at 292-93).

Moreover, claims against board employees in their official capacities are treated the same as suits against the board itself. <u>Love-Lane v. Martin</u>, 355 F.3d 766, 783 (4th Cir. 2004) (citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985)); <u>see also</u> <u>Sauers</u>, 179 F. Supp. 3d at 550 n.5. Since Plaintiffs' state constitutional claims against Defendant Board must be dismissed, they must likewise be dismissed against Barker in her official capacity.

Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiffs' state constitutional claims be <u>granted</u>.

#### b. **Intentional Infliction of Emotional Distress**

Defendant argues that Plaintiffs have not sufficiently alleged severe emotional

distress. However, in North Carolina, the same standard is used to meet this element for both NIED and IIED. Waddle v. Sparks, 414 S.E.2d 22, 27 (N.C. 1992).

As discussed above, the Court finds that Plaintiffs have alleged enough at this early stage to survive dismissal. Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiffs' IIED claim be denied.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendants' "Motion[s] to Dismiss" (documents #12, #14) be **GRANTED IN PART** and **DENIED IN PART**, that is, **GRANTED** as to Plaintiffs' claims under Article I, sections 15 and 19 of the North Carolina Constitution and **DENIED** in all other respects.

For all dismissed claims, including those Plaintiffs do not contest, the undersigned respectfully recommends dismissal with prejudice.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316;

Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED AND RECOMMENDED**.

Signed: August 11, 2020

David S. Cayer
United States Magistrate Judge